IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD TRAINER, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) 2:23-cv-1237 |
| WEST PENN ALLEGHENY HEALTH SYSTEM, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## **OPINION**

**Mark R. Hornak, Chief United States District Judge**

Original Plaintiffs Richard Trainer and Glen Beaty, now joined by a host of others,[1] bring this action against Allegheny Health Network ("AHN") and West Penn Allegheny Health System pursuant to the Fair Labor Standards Act ("FLSA"), Pennsylvania Minimum Wage Act ("PMWA"), and the Pennsylvania Wage Payment and Collection Law ("WPCL").[2]

Plaintiffs' union's collective bargaining agreement ("CBA") with AHN provides that Plaintiffs could divert a portion of their regular wages into a pension plan. However, when Plaintiffs worked overtime, AHN did not include such amounts in calculating Plaintiffs' "regular rate" for purposes of calculating their statutorily-mandated overtime rates. Plaintiffs allege that this practice violates the FLSA, PMWA, and WPCL. AHN moved to dismiss, arguing that

---

[1] The remaining named Plaintiffs are: Wayne Todd, John Armstrong, Kirk Basko, William Blaney, Corey Brandebura, Justin Brown, William Burns, David Capp, Christian Clayton, Donald Dewitt, Tony D'ignazio, Glen Dudicz, Alan Dunn, Robert English, Jim Fisher, Patrick Fontana, Sable Griedel, Chad Harris, Jared Hergenroeder, Zachary Hohman, Chad Jenkins, David Leathers, Sterling Long, Kenneth Luffy, Kevin Maloney, Gene Marnell, Jeffrey Marzole, Henton Mathis, Joh Mcnally, Mattew Meier, Harry Pokora, Patrick Pomfret, James Powers, Randy Rosak, Matt Stefanyak, Lance Tacik, Bradley Tingler, Ben Tranchini, George Vereb, James Wellington, William Wolfe, Bill Zane, William Planitzer, Frederick Reed, and John Runski. (ECF No. 20).

[2] The Court refers to Defendants as AHN in this Opinion.

1

Plaintiffs' claims are preempted and precluded by the Labor Management Relations Act ("LMRA"). (ECF No. 22).

For the reasons set forth below, AHN's Motion to Dismiss is granted in part and denied in part. Plaintiffs' WPCL claim is preempted and is dismissed with prejudice. Plaintiffs' FLSA and PMWA claims, however, do not necessarily turn on an interpretation of the CBA. Consequently, AHN's Motion is denied as to those claims.

### I. BACKGROUND

Plaintiffs are employees of Allegheny General Hospital and are represented by of the International Union of Operating Engineers, AFL-CIO, Local 95 ("the Union"). Beginning in December 2018, Plaintiffs had the option to divert a portion of their hourly, non-overtime wages to their pension plan per the terms of the Union's CBA with AHN. (ECF No. 20 ¶ 50). *E.g.*, Plaintiff Trainer is entitled to an hourly wage of $32.82, but because of the pension reduction, he actually receives as his pay an hourly wage of $27.72. (*Id.* ¶ 6). The difference is diverted as an additional pension contribution.

AHN allegedly reduced Plaintiffs' overtime pay by basing its calculation for such on the post-diversion wage rate. Continuing with the Trainer example, if AHN included the amount of the pension diversion as part of his regular wages for the purpose of calculating his overtime wage, he would be paid $49.23 per hour during overtime. Instead, he is paid $41.58 per hour. (*Id.*). Thus, Plaintiffs are allegedly not being paid the full 1.5x their actual hourly rate during overtime.

The relevant provisions of the CBA and related documents pertaining to the pension contribution diversion are as follows:

- Article 18: "The Hospital will allow employees to divert a portion of their general wage increase in each year of this agreement into an additional pension contribution. . . . In the event any law, regulation or statute results

- in this diversion provision adding a cost to the Hospital, the diversion provision will immediately become null and void." (ECF No. 20-1 at 16).[3]
- Authorization for Pension Deferral Form: "Assignment and Authorization to Deduct and Send a Portion of My Compensation to the International Union of Operating Engineers Central Pension Fund. . . I [name] hereby authorize an Employee Contribution of [rate] per hour to be deducted from my pay check each pay period and remitted to the International Union of Operating Engineers Central Pension Fund (the "fund"). (ECF No. 20-2).

On October 17, 2023, The Court held an Oral Argument on AHN's Motion to Dismiss the original Complaint. (ECF Nos. 18, 26). The Court granted Plaintiffs leave to file an Amended Complaint but advised Plaintiffs that such would be their last opportunity to amend. (ECF No. 26 at 59).

Plaintiffs submitted an Amended Complaint. (ECF No. 20). Many named Plaintiffs were added as parties, and Plaintiffs now also bring a PMWA claim. In addition, Plaintiffs have advised that as of November 10, 2023, AHN began including the amount of any pension deferrals as part of Plaintiffs' "regular rate" for purposes of calculating the overtime rate. (ECF No. 24 at 10).

AHN filed a Motion to Dismiss. (ECF No. 22). It argues that all three claims should be dismissed with prejudice. In the alternative, if the Court concludes that any of the three claims are not legally insufficient but needed to be grieved, AHN asks that the Court submit the following questions to arbitration under the labor contract:

- When properly interpreted, does the term "divert" refer to a pension contribution made by the Hospital or to a pension contribution by the employee?
- If the proper interpretation of the term "divert" results in increased overtime costs to the Hospital under applicable wage-and-hour laws, does the diversion immediately become null and void?

(ECF No. 23 at 12 n.8).

Plaintiffs oppose both arbitration and dismissal. (ECF No. 24). Plaintiffs also request leave to file a Second Amended Complaint in the event that the Court determines that their claims should

---

[3] The CBA provides for a grievance procedure in Article 14. (ECF No. 20-1 at 13–14). Such provides for arbitration where a dispute arising out of any of the CBA's terms arises.

be dismissed based on AHN's reversal of including the diversions as part of the regular wage for purposes of calculating the overtime wage. (*Id.* at 10).

Following merits briefing, the Supreme Court issued its decision in *Smith v. Spizzirri*. 601 U.S. 472 (2024). There, the Court held that "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Id.* at 478–79. In supplemental briefing regarding this decision, AHN argues that *Spizzirri* is not binding here because this matter is governed by the LMRA, not the FAA. (ECF No. 28). Further, AHN notes that unlike in *Spizzirri*, Plaintiffs have never requested a stay. Plaintiffs agree, but for different reasons. They say that because this matter is not arbitrable under any statute, *Spizzirri* does not apply. (ECF No. 29). The Court concludes that the pending Motion can be resolved without reference to *Spizzirri*.

## II.     LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"—but well-pleaded "factual content" requires more than "labels and conclusions," "a formulaic recitation of [the] cause of action," and "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When evaluating a Motion to Dismiss, the Court must accept all non-conclusory allegations in the complaint as true, and the non-moving party "must be given the benefit of every favorable inference." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)). The Court is to "disregard threadbare recitals of the

elements of a cause of action, legal conclusions, and conclusory statements." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). When evaluating the sufficiency of the Complaint's factual allegations, the Court may also consider "any matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citation and internal marks omitted).

## III.  DISCUSSION

### A.  WPCL Claim

"[T]he Pennsylvania Wage Law [the WPCL] is preempted by the Labor Management Relations Act and the National Labor Relations Act." *Antol v. Esposto*, 100 F.3d 1111, 1121 (3d Cir. 1996). This is because the WPCL does not create any independent statutory right to payment. *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003). The WPCL only provides a mechanism for the enforcement of wage payments under contracts, and where that underlying contract is a CBA, the LMRA controls.

Plaintiffs rely on *Larue v. Great Arrow Builders LLC* to argue that their WPCL claim is not preempted. No. 19-cv-932, 2020 WL 5747818 (W.D. Pa. Sept. 25, 2020). There, the court walked through the history of the LMRA, the FLSA, and the PMWA before concluding that Larue's FLSA and PMWA claims were not preempted by the LMRA. *Id.* at *21. However, the plaintiff did not advance a WPCL claim in that case. *Id.* at *1. *Larue* is therefore irrelevant in determining whether the WPCL is preempted by the LMRA—under *Antol*, it plainly is. Further, one case upon which *Larue* relies in concluding that the plaintiff's FLSA and PMWA claims were not preempted, *Philadelphia Metal Trades Council v. Konnerud Consulting W., A.S.*, recognized

5

that a WPCL claim can only exist where such is based on an underlying contract. No. 15-cv-5621, 2016 WL 1086709, at *5 (E.D. Pa. Mar. 21, 2016) (citing *Drummond v. Herr Foods Inc.*, Civ. Action No. 13-5991, 2014 WL 80729, at *3 (E.D. Pa. Jan. 9, 2014)); *see also Rosario v. First Student Mgmt. LLC*, 247 F. Supp. 3d 560, 569 (E.D. Pa. 2017) ("As explained above, a WPCL claim necessarily requires the existence of a contract. It only follows that when the contract relied upon to support a WPCL claim is a CBA, that claim is preempted by § 301 of the LMRA."). Here, the only contract averred to have existed is the CBA, and *Antol's* holding makes plain that the WPCL cannot be used to vindicate contractual rights sourced from a CBA without first satisfying that CBA's grievance procedures. Therefore, Plaintiffs' WPCL claim is dismissed with prejudice, as further amendment would be futile.

### B. FLSA and PMWA Claims

FLSA and PMWA claims are not automatically preempted by federal labor law. Unlike the WPCL, both the FLSA and PMWA create independent rights to payment of a regular wage, regardless of whether such is guaranteed by a contract.[4] 29 U.S.C. § 207(e); 29 U.S.C. § 207(a)(1) (defining overtime as a "a rate not less than one and one-half times the regular rate"); 43 Pa. Cons. Stat. § 333.104(c); 34 Pa. Code § 231.43. As a result, the minimum protections of these statutes "take precedence over conflicting provisions in a collectively bargained compensation arrangement." *Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 740–41 (1981).

---

[4] AHN treats the FLSA and PMWA claims as one and the same in the briefing (ECF No. 23 at 7–10), and the Court does the same for purposes of the resolution of this Motion. In any event, the PMWA "substantially parallels" the FLSA, *Ford-Greene v. NHS, Inc.*, 106 F. Supp. 3d 590, 613 (E.D. Pa. 2015), and courts addressing similar LMRA preemption challenges have allowed PMWA and FLSA claims to proceed for the same substantive reason—claims under these statutes do not necessarily turn on the interpretation of a CBA, even where the existence of the CBA gave rise to the dispute at issue. *See generally Konnerud*, 2016 WL 1086709; *Larue*, 2020 WL 5747818; *see also Beauregard v. Broadway Elec. Serv. Corp.*, No. 21-cv-1600, 2022 WL 2293969, at *10 (W.D. Pa. June 24, 2022) (concluding that PMWA claim was not preempted by the LMRA); *Bansept v. G & M Auto.*, 434 F. Supp. 3d 253 (E.D. Pa. 2020) (addressing FLSA and PMWA claims together and WPCL claim separately).

"An employee's right to relief under the FLSA, therefore, is distinct from an employee's contractual rights as provided in a collective bargaining agreement." *Bell v. Se. Pa. Transp. Auth.*, 733 F.3d 490, 494 (3d Cir. 2013).

FLSA and PMWA claims are only preempted by the LMRA where those claims are "inevitably intertwined with the interpretation or application of a collective bargaining agreement." *Id.* The hallmark Third Circuit case applying the "inevitable intertwinement" preemption rule is *Vadino v. A. Valey Engineers*, 903 F.2d 253 (3d Cir. 1990). AHN's argument on this point rests on *Vadino*.

In *Vadino*, the plaintiff-appellant argued that he was entitled to journeyman wages rather than normal wages under the CBA. *Id.* at 257. Vadino argued that his "'regular rate' was the hourly rate he was entitled to as a journeyman under the collective bargaining agreement, and not the lower rate which he was actually paid. Consequently, Vadino contend[ed] that the computation of his overtime wages on the basis of one and one-half times his actual wages failed to meet the requirement of the FLSA." *Id.* at 264. A. Valey argued that Vadino was, in essence, seeking an interpretation of the collective bargaining agreement, which can only be done pursuant to the LMRA's procedures. *Id.* The court held that "claims which rest on interpretations of the underlying collective bargaining agreement must be resolved pursuant to the procedures contemplated under the LMRA, specifically, grievance, arbitration, and, when permissible, suit in federal court under Section 301 [of the LMRA]." *Id.* at 266.

AHN argues that that the instant matter is similar to *Vadino* in that this is a "correct wage" claim, which should first be grieved pursuant to the LMRA (even though Defendants primarily seek dismissal, not a stay pending arbitration).

7

But *Vadino* is the rare case, not the general rule: "Tellingly, we have applied [the inevitable intertwinement rule] to dismiss a plaintiff's FLSA claim in only one case, *Vadino*. . . ." *Jones v. Does 1-10*, 857 F.3d 508, 512 (3d Cir. 2017). In *Jones*, the plaintiffs brought two claims, the relevant one for present purposes being a miscalculation of overtime rate claim. *Id.* at 511. The plaintiff nursing assistants were entitled to, per their CBA, "shift differentials." In short, the plaintiffs' regular rate varied based on the time of the shift, whether they had a recent raise, and whether they elected to forgo certain benefits. *Id.* However, these shift differentials were not included as part of the regular rate for purposes of calculating the proper overtime rate. *Id.* The defendant employer argued that the miscalculation of overtime rate claim rested upon "a dispute over an implicit term of the CBA." *Id.* at 513. The court rejected this argument, concluding that that the plaintiffs' overtime claim was independent of the CBA, as the FLSA required the court to "bypass how the CBA breaks down pay differentials." *Id.* at 514. The shift differentials did not depend on how they were defined in the CBA but instead on "whether they fit into one of the [FLSA's] statutory exclusions." *Id.*

The instant case is governed by *Jones*, not *Vadino*. The FLSA provides that:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). The regular rate, on which the proper overtime rate depends, "shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee," subject to an exclusive list of exceptions. *Id.* § 207(e). One such exception includes "contributions irrevocably made by an employer to a trustee or third person pursuant to a bona fide plan for

8

providing old-age, retirement, life, accident, or health insurance or similar benefits for employees." *Id.* § 207(e)(4).

The PMWA contains parallel provisions. The PMWA provides that "[e]mployees shall be paid for overtime not less than one and one-half times the employee's regular rate as prescribed in regulations promulgated by the secretary." 43 Pa. Cons. Stat. § 333.104(c). The Pennsylvania Code provides that renumeration, for purposes of determining an employee's regular rate (and by extension, their overtime rate) shall not include "[c]ontributions irrevocably made by an employer to a trustee or third person under a bona fide plan for providing old-age, retirement, life, accident or health insurance or similar benefits for employees." 34 Pa. Code § 231.43(a)(4).

These provisions establish a statutory and regulatory right to payment of the proper overtime rate independent of the CBA, and consequently, "[t]he resolution of Plaintiff's claims requires a factual determination of the amount of overtime the Employees worked and a legal determination whether such time is compensable under the PMWA" and the FLSA. *Konnerud*, 2016 WL 1086709, at *4.

That the operation of the CBA was the genesis of the legal dispute at issue does not mean that all claims stemming from it are preempted. The legal question here will be whether the pension fund diversions made at the written request of each Plaintiff qualify as "contributions made by an employer to a trustee or third person to a bona fide plan for" retirement and the like. 29 U.S.C. § 207(e)(4); 34 Pa. Code § 231.43(a)(4). If so, then Plaintiffs were paid the proper overtime wage because the pension diversions are properly excluded from statutory regular rate calculations. However, because the pension diversions at issue come out of Plaintiffs' wages and may or may not be considered to be "made by an employer," (ECF No. 20-1 at 16), it strikes the Court that Plaintiffs' pension contribution diversions will be classified one way or the other under the FLSA

9

and PMWA. Whichever way those interpretations are decided in the ultimate stages of this litigation, for present purposes, it suffices that Plaintiffs' claims turn on "whether they fit into one of the [FLSA's] statutory exclusions." *Jones*, 857 F.3d at 514. The historical facts surrounding those diversions will be just that, facts, and will go toward resolving the questions at issue. Thus, the issue will be one of statutory, not contractual, interpretation.

Plaintiffs' FLSA and PMWA claims are therefore not "inevitably intertwined" with an interpretation of the underlying CBA, and that the application of a provision of the CBA was the root of this litigation will not take precedence over the FLSA's substantive protections in light of the *Barrentine's* express direction to the contrary. The FLSA and PMWA contain no exhaustion procedures, and this Court will not inject an exhaustion procedure into those statutes here. *See Barrentine*, 450 U.S. at 740 ("No exhaustion requirement or other procedural barriers are set up, and no other forum for enforcement of statutory rights is referred to or created by the [FLSA].").

Sending this case to arbitration (or dismissing it) would unnecessarily allow the provisions of the CBA to override the protections provided by the FLSA and PMWA. More critically, there is not a contract interpretation question here, but only one of how the extra pension contributions involved here are to be characterized for statutory purposes. A contrary conclusion would also run afoul of Supreme Court and Third Circuit precedent and could render the FLSA and its Pennsylvania state law analogue ineffectual against allegedly unfair employment practices anytime there was a CBA in some way connected to the dispute at issue. Such does not square with the text of the FLSA and the PMWA or the governing case law interpreting these statutes. As a result, AHN's Motion to Dismiss Plaintiffs' FLSA and PMWA claims is denied.

## IV. CONCLUSION

For the reasons above, Plaintiffs' WPCL claim is dismissed with prejudice. AHN's Motion to Dismiss Plaintiffs' FLSA and PMWA claims is denied.

Within thirty (30) days of the date of this Opinion, Plaintiffs shall file their Second Amended Complaint pertaining to AHN's reversal of policy on the overtime rate calculations at issue. (ECF No. 24 at 10). Should Plaintiffs fail to timely file a Second Amended Complaint, the First Amended Complaint—spare the now-dismissed WPCL claim—shall be the governing Complaint in this action. AHN shall submit its Answer within thirty (30) days of the submission of Plaintiffs' Second Amended Complaint.

s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge

Dated: July 31, 2024